**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**CRIMINAL ACTION NO. 5:23-44-GFVT**

**UNITED STATES OF AMERICA**                                              **PLAINTIFF**


**V.**                        **UNITED STATES' SENTENCING**
                              **MEMORANDUM**


**TYLER BRADY LAWSON**                                              **DEFENDANT**

* * * * *


This case arises from the Defendant's exploitation of two minors, Victim #1 and Victim #2, to produce sexually explicit visual depictions.

On April 20, 2023, a federal grand jury charged the Defendant (also referred to herein as "Tyler" or "Lawson") with one count of possession of child pornography (or "child sexual abuse material" or "CSAM") in violation of 18 U.S.C. § 2252(a)(4)(B); one count of possession of computer-generated or cartoon child pornography in violation of 18 U.S.C. §1466A(b)(1); one count of production of child pornography, relating to Victim #1, in violation of 18 U.S.C. § 2251(a); and one count of production of child pornography, relating to Victim #2, in violation of 18 U.S.C. § 2251(a). [R. 16: Indictment.] On October 5, 2023, the Defendant pleaded guilty to Count 3 of the indictment. [R. 34: Minute Entry; R. 32: Plea Agreement.]

1

The statutory penalties for production of child pornography include imprisonment for not less than 15 years and not more than 30 years, a fine of not more than $250,000, and a term of supervised release of not less than 5 years and up to life..

The United States Probation Office ("USPO") calculated the Defendant's total offense level under the United States Sentencing Guidelines ("USSG" or "guidelines") as 49—treated as a level 43 for the purposes of the sentencing table. With a criminal history category of I and total offense level of 43, the Defendant's recommended term of imprisonment under the guidelines is thirty years.

The Defendant submitted one objection to USPO's Presentence Report ("PSR"). However, because the Defendant's total offense level will be the same with or without the application of the contested enhancement, the Defendant plans to withdraw his objection at the time of sentencing.

The United States recommends a sentence of thirty years imprisonment to be followed by a lifetime term of supervision. The United States and the Defendant plan to present the Court with an agreed-upon figure for restitution at the time of sentencing.

### A. Background

The Defendant is the long-time boyfriend of Victim #2's aunt, M.S. Victim #1 is Victim #2's half-sister and has no blood relationship to the Defendant or M.S. However, both Victim #1 and Victim #2 called the Defendant "uncle" and considered him family.

When Victim #1 was five years old, she disclosed information to anoher aunt that indicated that Lawson had sexually abused her. Initially, Victim #1 pointed to her lower abdomen and said that Lawson slowly tickled her in that area. This prompted the aunt to

2

record the remainder of her conversation with Victim #1. After the aunt turned on the recording device, she asked Victim #1 about the circumstances of the tickling. Victim #1 said that she "play[ed] games with Tyler." Victim #1 elaborated that Lawson called her his "special girl" and that they played "secret games that no one else need[ed] to know about." When asked to provide more information about the secret games, Victim #1 said: "Tyler puts his wiener in my butt cheeks" and "milk comes out of Tyler's wiener." This allegation was reported to law enforcement in Northern Kentucky. However, Lawson passed a polygraph and no additional actions were taken to investigate or prosecute the allegations.

Because Lawson passed a polygraph, Victim #1 was eventually permitted to visit M.S. and Lawson again. Before July 2022, Victim #1 and Victim #2 frequently visited the Defendant and M.S. at their apartment in Boone County, Kentucky. After July 2022, the victims frequently visited the Defendant and M.S. at their home in Scott County, Kentucky.

On March 1, 2023, Georgetown Police Department ("GPD") received a report that Victim #1 told her therapist that Lawson sexually abused her. When Victim #1 sat for a forensic interview, she disclosed that Lawson kissed her on her mouth, touched her breasts and genitals, digitally penetrated her vagina and anus, penetrated her anus with an object, performed oral sex on her, and engaged in vaginal intercourse with her. Although it was not clear from her interview when the sex abuse started again, she mentioned one instance of oral sex that occurred "like two years ago." She also said that Lawson abused her nearly every time she went to his house. Victim #1 further reported that Lawson threatened that he would hurt her if she told anyone.

When GPD eventually searched Lawson's electronic devices, they located computer-generated and cartoon CSAM on the computer. On the phone, law enforcement found twenty-four CSAM images of Victim #1 and five CSAM images of Victim #2. The twenty-four images of Victim #1 depict lubricant on Victim #1's anus, an erect penis placed on Victim #1's naked buttocks, and penetration of Victim #1's anus with various sexual devices such as anal plugs and anal beads. The five images of Victim #2 depict her naked buttocks and vagina.

Victim #1 is now eleven years old, and Victim # 2 is six years old. At the time of the offense conduct, both children were prepubescent.

**B. The United States' Recommended Sentence**

The United States requests that the Court impose a thirty-year term of incarceration. As outlined below, the sentencing factors contained within 18 U.S.C. § 3553(a) support the requested sentence.

1. <u>The nature and circumstances of the offense and the history and characteristics of the defendant.</u>

The Defendant produced CSAM of two minor children who considered him family. He abused one of his victims for years before documenting her trauma via camera.

The Defendant is a pedophile who has demonstrated a willingness to act on his deviant sexual interests. Indeed, he abused Victim #1 numerous times over the course of several years, doing so even after he nearly got caught for such conduct in 2018. The repetitive nature of his conduct and his inability to self-correct after a brush with law

enforcement suggest an intractable sexual attraction to children, a lack of regard for the impact of his conduct, and an inability to conform his conduct to legal and social norms.

When the Defendant abused Victim #1 at five years old, his denial caused others to doubt the young child's word, profoundly impacting her sense of safety and trust in adults. In the subsequent years, while the Defendant portrayed himself as an upstanding citizen who would never abuse a child and Victim #1 as a troubled girl who had a crush on him, he continued to abuse her in secret. Just as the Defendant's sexual abuse of Victim #1 demonstrates a propensity to value self-gratification over the wellbeing of others, his gaslighting of this little girl demonstrates a propensity for cruelty.

When the Defendant started abusing Victim # 1 again (after the 2018 incident), he started threatening her to ensure her silence, further demonstrating his cruel character.  The Defendant took advantage of this coerced silence to escalate the severity and frequency of his abuse—vaginally and/or anally penetrating her with his fingers, sex toys, and penis and performing oral sex on her on a regular basis. The Defendant further escalated his conduct by producing CSAM of Victim #1.

Although the worst child exploitation offenders are often selected for federal prosecution, several factors make this case uniquely severe even among federal cases, including (1) the nature and frequency of the hands-on sexual abuse with Victim #1; (2) the threats to Victim #1; (3) the in-person (rather than internet-based) means of production of CSAM; (4) the number of production victims; (5) the quasi-familial relationship between the victims and the offender; and (6) the fact that the offense conduct occurred after the Defendant's successful evasion of charges in 2018. While at least one of these

factors is captured by the guideline calculations, some of these factors (e.g., the cruelty towards Victim #1) are not. Whether these aggravators are captured by the guidelines or not, they are certainly not outweighed by any positive or mitigating factors to support a downward variance.

2. The seriousness of the offense.

Although the Defendant's longstanding hands-on abuse of Victim #1 is important to sentencing, the offense of conviction here is production of child pornography, a crime that inflicts an added layer of harm (in addition to any underlying sexual abuse) to both victims and society. "There is no disputing that 'child pornography is . . . a serious crime,' because '[it] harms and debases the most defenseless of our citizens.'" *United States v. Pelloski*, 31 F. Supp. 3d 952, 959 (S.D. Ohio 2014) (quoting *United States v. Robinson*, 669 F.3d 767, 776 (6th Cir. 2012) and *United States v. Williams*, 553 U.S. 285, 307 (2008)). These offenses "result in perpetual harm to victims and validate and normalize the sexual exploitation of children." *Id*. (*quoting* United States Sentencing Commission, Child Pornography Report, at vi). "Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place…" *New York v. Ferber*, 458 U.S. 747, n.10 (1982). In a study performed by the Canadian Centre of Child Protection, victims of child pornography offenses reported that the imagery created by their abusers (as opposed to the hands-on offenses themselves) made the victims feel powerless, ashamed and humiliated, and like they were being abused over and over.[1]

---

[1] *See* Canadian Centre for Child Protection, *Survivors' Survey, Full Report 2017* (2017), p. 148, https://protectchildren.ca/pdfs/C3P_SurvivorsSurveyFullReport2017.pdf.

3.  Promotion of respect for the law and just punishment.

"Retribution is a valid penological goal." *Glossip v. Gross*, 576 U.S. 863, 932 (2015) (Breyer, J., dissenting). "Punishment is the way in which society expresses denunciation of wrongdoing," and it is thus essential that this Court promote and maintain respect for the law by pronouncing a sentence that fully reflects society's revulsion with the crime committed by the Defendant. *See Gregg v. Georgia*, 428 U.S. 153, 184 n. 30 (1976). "Defendants convicted of the production of child pornography are the most culpable of the child pornography offenders" and "are, without question, deserving of lengthy sentences of imprisonment given the direct and lasting harm they inflict upon children." *Pelloski*, 31 F. Supp. 3d at 954.

4.  Deterrence.

The Supreme Court has noted "grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class..." *Smith v. Doe*, 538 U.S. 84, 103 (2003). *See also United States v. Pugh*, 515 F.3d 1179, 1201 (11th Cir. 2008) ("sex offenders have appalling rates of recidivism and their crimes are under-reported."); *United States v. Allison*, 447 F.3d 402, 405–06 (5th Cir. 2006) ("Congress explicitly recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders."); *United States v. Hadden*, 2023 U.S. Dist. LEXIS 19839, at *19 (S.D.N.Y. Feb. 6, 2023) (noting that observed recidivism rates are underestimates of true re-offense rates and further noting the "underwhelming" results of sex offender treatment).

This Defendant, a repeat hands-on offender with a years' long sexual interest in

prepubescent children,[2] fits within the aforementioned dangerous class of offenders and requires specific deterrence.

"General deterrence is [also] crucial in the child pornography context." *United States v. Camiscione*, 591 F.3d 823, 834 (6th Cir. 2010). *See also United States v. Bistline*, 665 F.3d 758, 767 (6th Cir. 2012) (reversing the district court for neglecting the importance of deterrence in a sentencing for possession of child pornography). The amount of CSAM on the internet has reached epidemic proportions. According to a recent article by the New York Times, the number of child pornography cyber tips grew exponentially between 1998 and 2018, now reaching a "crisis point."[3] Because of this proliferation of child pornography, a deterrent message must be sent to other would-be producers of child pornography. *See, e.g., United States v. Widmer,* 511 F. App'x 506, 511 (6th Cir. 2013) ("sentence was necessary to send a signal to would-be offenders that receipt of child pornography carries significant consequences").

5. <u>Protection of the public.</u>

"[P]rotection is a function of two variables: the level of risk that conduct will occur and the level of harm that will be inflicted if that conduct does occur." *United States v. Irey*, 612 F.3d 1160, 1217 (11th Cir. 2010). Because the Defendant presents a high risk of again

---

[2] *See e.g., United States v. Whisnant,* No. 1:14-cr-00024-MR-WCM-1, 2024 U.S. Dist. LEXIS 64107, at *9 (W.D.N.C. Apr. 8, 2024) (discussing risk factors for reoffending such as length of sexual preoccupation with children, persistence of offending and deviant sexual interests, engagement of high-risk behavior of being alone with children, and interest in prepubescent children).

[3] *See* Michael H. Keller and Gabriel J.X. Dance, *The Internet is Overrun with Images of Child Sexual Abuse. What Went Wrong?*, N.Y. TIMES, Sep. 29, 2019. Available at https://www.nytimes.com/interactive/2019/09/28/us/child-sex-abuse.html (last accessed August 7, 2023).

committing offenses that cause significant harm, he poses a particular threat towards the public.

      6.  <u>Unwarranted sentencing disparities.</u>

"[T]he Sentencing Guidelines are themselves an anti-disparity formula." *United States v. Sanchez*, 989 F.3d 523, 540 (7th Cir. 2021). *See also United States v. Boucher,* 937 F.3d 702, 708 (6th Cir. 2019) ("To avoid sentence disparities, the Guidelines provide a transparent and predictable sentencing range for defendants who fall within the 'heartland' of average cases 'to which the Commission intends individual Guidelines to apply'"). The imposition of a guideline sentence of thirty years in this case thus avoids unwarranted sentencing disparities.

## C. Restitution

The United States and the Defendant plan to present an agreed-upon restitution amount to the Court at sentencing.

## D. Victim Impact

The United States recently received victim impact statements from representatives of Victim #1 and Victim #2. The United States anticipates that these statements will be read by the representatives at sentencing. The victims' mother plans to allocute on behalf of her children. Because Victim #2's father is deceased, Victim #2's grandfather would like to allocute on her behalf.

Victim #1 may provide a written statement. The United States will provide any such statement to the Court and defense counsel upon receiving it. If requested by Victim #1, the undersigned will read the statement at sentencing.

## E. Fines and Monetary Assessments

Although the Defendant holds some equity in a piece of real property, he likely has limited ability to pay a fine or the maximum monetary assessment under 18 U.S.C. §2259A(a)(3). To United States believes that any current or future assets would be best allocated to the Defendant's restitution judgment.

## F. Conclusion

This Defendant engaged in a long campaign of sexual abuse against Victim #1 and eventually produced CSAM of Victim #1 and her younger sister, Victim #2. His actions will cause these children, particularly Victim #1, enormous and destabilizing pain for the rest of their lives. These and the other sentencing considerations outlined herein support a guideline sentence of thirty years.

Respectfully submitted,

CARLTON S. SHIER, IV
UNITED STATES ATTORNEY

By:    s/Mary L. Melton
       Assistant United States Attorney
       260 W. Vine Street, Suite 300
       Lexington, Kentucky 40507-1612
       (859) 685-4802
       Mary.Melton@usdoj.gov

10

## <u>CERTIFICATE OF SERVICE</u>

On April 11, 2024, I electronically filed this response through the ECF system, which will send notice of docket activity to defense counsel of record.

<div style="margin-left:40%;">

s/ Mary Lauren Melton    
Assistant United States Attorney

</div>